IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | No. 24-CR-03013-006-LTS |
| vs. | ) ) ) | |
| YOVANY CIERO, | ) ) | |
| Defendant. | ) ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

I.   INTRODUCTION ............................................................................................. 1
II.  WITNESSES AND EXHIBITS ....................................................................... 2
     A.  Potential Witnesses ................................................................................ 2
     B.  Exhibits ................................................................................................... 2
III. FACTS .............................................................................................................. 2
IV.  ISSUES ............................................................................................................. 2
     A.  Loss ......................................................................................................... 2
     B.  Sophisticated Means .............................................................................. 5
     C.  Possession or Trafficking of an Authentication Feature .................... 7
     D.  Sophisticated Laundering ..................................................................... 8
     E.  Role ......................................................................................................... 9
     F.  Obstruction of Justice .......................................................................... 10
     G.  Zero-Point Offender ............................................................................ 10
     H.  Restitution ............................................................................................ 10
IV.  CONCLUSION .............................................................................................. 11

I.   INTRODUCTION

Pursuant to the Court's Order (R. Doc. 390), the government files the instant Sentencing Memorandum.

1

## II. WITNESSES AND EXHIBITS

### A. Potential Witnesses

1. None. The government intends to rely on the trial evidence in this case.

### B. Exhibits

1. None. The government intends to rely on the trial evidence in this case.

## III. FACTS

Because the Court presided over the trial and is very familiar with the facts of the case, the government does not repeat those facts here. Instead, the government will highlight particularly relevant facts from the trial in conjunction with its arguments concerning the issues below.

## IV. ISSUES

The United States Probation Office ("USPO") has identified eight issues in the PSR. The government addresses each issue below, in turn.

### A. Loss

The USPO recommends the Court find that defendant's base offense level is 19, pursuant to USSG §2S1.1(a)(1), in light of the jury's guilty verdict on the most serious count of conviction, *i.e.*, Count 38, Money Laundering Conspiracy in violation of 18 U.S.C. § 1956(h). This recommended base offense level for defendant's § 1956(h) conviction depends on a number of subsidiary Guidelines findings, because the base offense level for Count 38 under §2S1.1(a)(1) is "[t]he offense level for the underlying offense from which the laundered funds were derived." As relevant to this first issue, defendant argues the USPO's base offense

level calculation contains an erroneous subsidiary "loss" finding under USSG §2B1.1 for the "underlying offense."

For purposes of USSG §§2S1.1 and 1B1.3, and consistent with the indictment and the jury instructions, the "underlying offense" in this case is Wire Fraud in violation of 18 U.S.C. § 1343. Thus, the general fraud guideline, USSG §2B1.1, provides the underlying Guidelines calculations for USSG §2S1.1(a) and requires the Court to calculate "loss."

For purposes of §2B1.1, "loss" includes both actual loss and intended loss. USSG §2B1.1, Table Note "C." "'Actual loss'" means the reasonably foreseeable pecuniary harm that resulted from the offense." *Id.* "Intended loss" includes "pecuniary harm the defendant purposely sought to inflict," even if impossible or unlikely to occur. *Id.* The Court need only estimate loss, which may include "[t]he fair market value of the property unlawfully taken." USSG §2B1.1, cmt (n3(B)).

Here, because the trial evidence shows that defendant participated in facilitating fraudulent PPP loans for himself and M.P.G., and otherwise laundering fraudulently obtained PPP loan moneys directly and by means of Yordanis Perez Velazquez ("Yordanis"), whom he recruited for that purpose, the Court should find that the moneys the SBA and its participating lenders lost from such fraudulent PPP loans constitutes "reasonably foreseeable harm that resulted from [defendant's] offense." USSG §2B1.1, Notes to Table (C). This harm to the SBA and its participating lenders in the PPP, which totals $232,543, qualifies as "actual loss," because the harm was reasonably foreseeable to defendant and actual monetary loss to a victim may be determined. *See United States v. Harmon*, 944

3

Case 3:24-cr-03013-LTS-KEM    Document 396    Filed 11/26/25    Page 3 of 12

F.3d 734, 738 (8th Cir. 2019) (taking "broad view of what conduct and related loss amounts can be included in calculating loss," including uncharged relevant conduct that was part of common scheme or plan (quoting *United States v. DeRosier*, 501 F.3d 888, 896 (8th Cir. 2007)); *cf. United States v. Miller*, 588 F.3d 560, 565 (8th Cir. 2009) (explaining that gain to the defendant may only be used as the measure of loss under the guidelines if neither actual nor intended loss to a victim can be determined) (citing USSG §2B1.1 cmt. (n.2(B)); *United States v. Van Brocklin*, 115 F.3d 587, 600 (8th Cir. 1997) (construing predecessor to USSG §2B1.1 and holding that "the district court clearly erred in equating 'loss' solely with the defendants' profit").

The USPO correctly concludes that, because the jury convicted defendant of knowingly participating in the underlying offense of Wire Fraud, he is responsible for the more than $150,000 in loss that resulted from the scheme to defraud. *See* USSG §2S1.1, cmt. (n.2(B)) (stating §2S1.1(a)(1) applies if the defendant committed the underlying offense or is otherwise accountable for it). Although defendant continues to deny he conspired with Adrian Pupo Perez ("Adrian") and Helen Leyva Santiesteban ("Helen"), the jury found otherwise.[1]

Therefore, pursuant to USSG §2S1.1, a 10-level enhancement should be included within defendant's base offense level for Count 38, because defendant is

---

[1] The USPO correctly points out that defendant is only held responsible in this loss calculation for the stolen funds he personally obtained or laundered, not the entire $2.4 million at issue in the conspiracy. Thus, the USPO's loss calculation is appropriately conservative insofar as there is no attempt to attribute the loss of other "bundlers" and "facilitators" to defendant under the reasonable foreseeability provisions of USSG §1B1.3(a)(1)(B).

4

responsible for more than $150,000 in "loss" for "the underlying offense" under USSG §2B1.1(b)(1)(F).

B. **Sophisticated Means**

The government also requests the Court apply a two-level enhancement for sophisticated means under USSG §2B1.1(b)(10)(C) within defendant's base offense level under USSG §2S1.1 for Count 38. "The sentencing guidelines instruct courts to increase a defendant's offense level by two levels if the offense 'involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means.'" *United States v. Garbacz*, 33 F.4th 459, 474 (8th Cir. 2022) (quoting USSG §2B1.1(b)(10)(C)). The commentary to §2B1.1(b)(10(C) states:

> For purposes of subsection (b)(10)(C), "sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

USSG §2B1.1, comment. (n.9(B)).

The two examples identified in the commentary are "'simply illustrative, not exclusive.'" *United States v. Jones*, 778 F.3d 1056, 1058 (8th Cir. 2015) (quoting *United States v. Lewis*, 93 F.3d 1075, 1082 (2d. Cir. 1996)). The Eighth Circuit Court of Appeals has made clear that "[r]epetitive and coordinated conduct, though no one step is particularly complicated, can be a sophisticated scheme . . . ." *United States v. Finck*, 407 F.3d 908, 915 (8th Cir. 2005). At bottom, "[a]n offense involve[s] sophisticated means if, 'viewed as a whole,' the offense conduct is 'notably more intricate than that of

the garden-variety offense.'" *Garbacz*, 33 F.4th at 474 (quoting *Belfrey*, 928 F.3d at 753).

Here, defendant's offense conduct—even when one limits its scope to that portion of such conduct in which defendant personally engaged—was notably more intricate than that of the underlying garden-variety offense of wire fraud. Defendant's conduct was not limited to one or two instances of fraudulent conduct but instead repetitive and coordinated with many others. The trial evidence established that defendant recruited multiple individuals into the PPP fraud scheme and repeatedly facilitated that scheme by transferring moneys to Helen and Adrian. Defendant used the wire transfer service "Zelle" and, on some occasions, directed the recipients of the fraudulent loan proceeds to address funds through Zelle to M.P.G., instead of to the defendant, in an attempt to conceal his own involvement and the involvement of Helen and Adrian. Further, at the outset of the fraudulent PPP loan scheme in June 2020, Helen and Adrian paid the defendant over $1,400, which he transferred to a cryptocurrency account that he controlled at Coinbase. Defendant thereafter periodically transferred moneys from an account that he controlled at Capital One to Coinbase.

In sum, defendant's conduct was repetitive and coordinated, *Finck*, 407 F.3d at 915, and it was notably more intricate than the garden-variety offense, *Garbacz*, 33 F.4th at 474. Accordingly, the Court should find the sophisticated means enhancement applies.

### C. Possession or Trafficking of an Authentication Feature

The government also requests the Court apply a two-level enhancement for possession or trafficking of an authentication feature, pursuant to USSG §2B1.1(b)(11), within defendant's base offense level under USSG §2S1.1 for Count 38.

The trial evidence showed that defendant's role in the scheme to defraud was to recruit individuals into the scheme, obtain their personal identifying information for the fraudulent loan applications (including photographs of drivers' licenses containing authentication features described in 18 U.S.C. § 1028(d)), and then pass that information along to Adrian and Helen, who submitted the fraudulent loan applications to lenders participating in the PPP.

Comment 10 to §2B1.1 defines "authentication feature" to have the same meaning as the same phrase in 18 U.S.C. § 1028(d)(1). Section 1028(d), in turn, defines "authentication feature" to include any hologram, watermark, certification, symbol, code, image, sequence of numbers or letters, or other feature that either individually or in combination with another feature is used by the issuing authority on an identification document, document-making implement, or means of identification to determine if the document is counterfeit, altered, or otherwise falsified. The phrase "identification document" in § 1028(d) includes state driver's licenses. *See* 18 U.S.C. § 1028(d)(3). Here, an example of an authentication feature that defendant possessed and trafficked is Trial Exhibit 8D, an Iowa Driver's License containing a hologram, "Real ID" star, *etc.*

Accordingly, this Court should find the possession or trafficking of an authentication feature enhancement under USSG §2B1.1(b)(11) applies.

**D.     Sophisticated Laundering**

The USPO recommends a two-level enhancement, pursuant to USSG §2S1.1(b)(3), because defendant's offense involved "sophisticated laundering." The Guidelines commentary to §2S1.1(b)(3) defines "sophisticated laundering" as "complex or intricate offense conduct pertaining to the execution or concealment of the 18 U.S.C. § 1956 offense." USSG §2S1.1, cmt. (n.5). The commentary further states sophisticated laundering "typically involves the use of" (1) fictitious entities; (2) shell corporations; (3) two or more levels of transactions; or (4) offshore financial accounts.

A "sophisticated laundering" enhancement is appropriate in this case. The trial evidence made plain that defendant's money laundering offense involved multiple layers of financial transactions that were designed to conceal and disguise the nature, location, source, ownership, and control of the illegally obtained SBA moneys. Further, at the outset of the scheme, defendant used a cryptocurrency account that he controlled at Coinbase, and he then periodically transferred funds from an account that he controlled at Capital One to Coinbase. Defendant also directed PPP loan recipients to send fees to an account that he controlled in the name of M.P.G. Finally, defendant incorporated "YC Transport, LLC" with the Iowa Secretary of State in a further attempt to conceal the scheme. *See, e.g., United States v. Pizano*, 421 F.3d 707, 730-31 (8th Cir. 2005) (affirming imposition of sophisticated laundering enhancement on account of "layering" and making clear "[t]he guideline does not require a finding that each layer was composed of a complex transaction"); *United States v. Rubashkin*, 718 F. Supp. 953, 976 (N.D.

8
Case 3:24-cr-03013-LTS-KEM     Document 396     Filed 11/26/25     Page 8 of 12

Iowa 2010) (applying sophisticated laundering enhancement despite lack of evidence of fictitious entities, offshore financial accounts, or shell corporations, because the defendant layered transactions, even if those transactions were not particularly sophisticated), *aff'd on other grounds*, 655 F.3d 849 (8th Cir. 2011).

### E. Role

The USPO recommends a three-level enhancement, pursuant to USSG §3B1.1(b), for defendant's aggravating role in the offense. USSG §3B1.1(b) directs that, if the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by three levels.

Of the more than 100 participants in this fraudulent PPP loan scheme, the defendant was one of six high-level "bundlers" or "facilitators" working to recruit fraudulent PPP loan applicants for Adrian and Helen. After the PPP applicants received their fraudulent loans, defendant requested and collected the fees for the loans from the applicants. Again, defendant directed the applicants either to transfer the money to him directly or indirectly to his significant other, M.P.G. Defendant then transferred fees to Adrian and Helen. In addition, the defendant personally recruited Yordanis into the scheme to defraud as a lower-level bundler—also collecting fees from applicants whose loans Yordanis facilitated. Therefore, the role enhancement applies. *See United States v. Irlmeier*, 750 F.3d 759, 764 (8th Cir. 2014) (defendant may be subject to the §3B1.1(b) enhancement even if he managed or supervised only one participant in a single transaction); *United States v. Felix-Aguirre*, 824 F. App'x 429, 431 (8th Cir. 2020) (unpub. per curiam) (holding

9

three-level enhancement applied for role in money laundering conspiracy, where defendant "called upon [another co-conspirator] to help set up utilities for residences that were then used . . . for money laundering operations").

F.  **Obstruction of Justice**

The USPO recommends a two-level enhancement, pursuant to USSG §3C1.1, for obstruction of justice. As relevant here, the Guidelines commentary defines obstructive acts to include false testimony at trial. USSG §3C1.1, (cmt. n.4(B)).

The Court should apply the obstruction of justice enhancement under USSG §3C1.1, because defendant perjured himself repeatedly at trial. Specifically, defendant falsely testified (1) he did not know the PPP loan funds were illegal or fraudulent when he received and sent them, when, as the jury correctly found based on strong evidence, that defendant acted knowingly (R. Doc. 363, at 42, 58, 60, 61); (2) he repays his debts, especially government loans, when in truth he did not repay his credit card debts and was receiving delinquency notices on his residential FHA loan) (*Id.* at 42, 44-45, 52-55); and (3) the only time he used cash was when he needed $10 to $20 to put in the offering plate at church on Sundays when, in truth, he withdrew over $4,000 in cash via multiple ATM transactions in August 2020 (*Id.* at 63, 88-90).

G.  **Zero-Point Offender**

Because defendant should receive an aggravating role enhancement under USSG §3B1.1, he is ineligible for a zero-point offender reduction under USSG §4C1.1. *See* USSG §4C1.1(a)(10).

H.  **Restitution**

The probation office correctly states that defendant should be required to

make $212,293 in restitution to the SBA. This restitution amount is equal to the total actual loss for which defendant is responsible, specifically, $232,543, minus the $20,250 in fraudulent loan proceeds that M.R.M. voluntarily returned to her lender. Defendant insists he is at most responsible for $40,348, but the Court should overrule this objection, in light of the trial evidence, the jury's verdicts, and the mandatory restitution provisions of 18 U.S.C. § 3663A.

## IV. CONCLUSION

In addition to ordering $212,293 in restitution to the SBA, the Court should determine defendant's Guidelines range to be 121 to 151 months of imprisonment, based upon a total offense level of 32 and a criminal history category of I. This calculation consists of:

- A base offense level of 23, pursuant §2S1.1(a)(1), based upon (1) an underlying base offense level for wire fraud of 7 under USSG §2B1.1(a)(1); (2) a 10-level increase for loss under USSG §2B1.1(b)(1); (3) a 2-level increase under USSG §2B1.1(b)(10)(C) for sophisticated means; (4) a 2-level increase under USSG §2B1.1(b)(11) for possession or trafficking of an authentication feature; and (5) a 2-level increase under USSG §2B1.1(b)(12) because defendant's offense involves conduct described in 18 U.S.C. § 1040 (disaster benefits);

- Pursuant to USSG §2S1.1(b)(2), a 2-level increase, because defendant was convicted under 18 U.S.C. § 1956;

- Pursuant to USSG §2S1.1(b)(3), a 2-level increase for sophisticated laundering;

- Pursuant to USSG §3B1.1(b)(2), a 3-level increase for aggravating role;

and

- Pursuant to USSG §3C1.1, a 2-level increase for obstruction of justice.

Respectfully submitted,

LEIF OLSON
United States Attorney

By: */s/ Timothy L. Vavricek*

TIMOTHY L. VAVRICEK
Assistant United States Attorney
111 7th Avenue SE, Box 1
Cedar Rapids, Iowa 52401-2101
319-363-6333
319-363-1990 – Fax
Tim.Vavricek@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2025, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to the parties or attorneys of record.

UNITED STATES ATTORNEY

BY: */s/ TLV*